IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 10-C-1087 |
| v. | ) ) | |
| NCR CORPORATION and INTERNATIONAL PAPER CO., | ) ) ) | |
| Defendants. | ) | |

_____

**DEFENDANT NCR CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**
_____

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF RELEVANT FACTS ................................................................................. 2

ARGUMENT .............................................................................................................................. 6

    I.       Applicable Law. .................................................................................................... 6

    II.      Venue Is Proper in the Western District of Michigan. ......................................... 7

    III.     This Action Should Be Transferred to the Western District of Michigan. ......... 7

          A.      Transfer Would Promote the Interests of Justice. ................................... 8

          B.      Michigan Is a Significantly More Convenient Forum. ......................... 10

CONCLUSION ........................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Page(s)**

Baroody v. Bankair, Inc.,
    No. 02 C 7596, 2003 WL 168647 (N.D. Ill. Jan. 23, 2003) .........................................11

Brady v. Hanger Orthopedic Grp., Inc.,
    No. 05 C 0492, 2006 WL 2560953 (N.D. Ill. Aug. 30, 2006)................................6, 11

CMG Worldwide, Inc. v. Upper Deck Co.,
    No. 1:08-cv-761-RLY-JMS, 2008 WL 4690983 (S.D. Ind. Oct. 22, 2008)................12

Conseco Life Ins. Co. v. Reliance Ins. Co.,
    No. 99 C 5020, 2001 WL 1631873 (N.D. Ill. Dec. 14, 2001) ..................................6, 7

Ellis Corp. v. Jensen USA, Inc.,
    No. 02 C 7380, 2003 WL 22111100 (N.D. Ill. Sept. 9, 2003)......................................7

Forcillo v. LeMond Fitness, Inc.,
    220 F.R.D. 550 (S.D. Ill. 2004) ...................................................................................9

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947)...................................................................................................10

In re Cuyahoga Equip. Corp.,
    980 F.2d 110 (2d Cir. 1992).........................................................................................9

Kalamazoo River Study Grp. v. Rockwell Int'l,
    107 F. Supp. 2d 817 (W.D. Mich. 2000) ............................................................2, 3, 4

Kalamazoo River Study Grp. v. Menasha Corp.,
    228 F.3d 648 (6th Cir. 2000) .......................................................................................4

Kalamazoo River Study Grp. v. Rockwell Int'l,
    171 F.3d 1065 (6th Cir. 1999) .....................................................................................4

Kalamazoo River Study Grp.v. Rockwell Int'l,
    No. 1:95-CV-838 (W.D. Mich., filed Dec. 8, 1998).....................................................3

Kalamazoo River Study Grp. v. Rockwell Int'l Corp.,
    274 F.3d 1043 (6th Cir. 2001) .....................................................................................4

Kalamazoo River Study Grp. v. Rockwell Int'l Corp.,
    355 F.3d 574 (6th Cir. 2004) .......................................................................................4

Leuders v. 3M Co.,
    No. 08 C 2457, 2008 WL 2705444 (N.D. Ill. Jul. 9, 2008) ........................7, 11, 12, 13

<u>Martinez v. Twin Garden Sales, Inc.</u>,
    No. 09-CV-653, 2010 WL 1180366 (E.D. Wis. Mar. 23, 2010) ................................6

<u>Nat'l Wildlife Fed'n v. Harvey</u>,
    437 F. Supp. 2d 42 (D.D.C. 2006) ..............................................................................10

<u>Regents of the Univ. of Cal. v. Eli Lilly & Co.</u>,
    119 F.3d 1559 (Fed. Cir. 1997)......................................................................................8

<u>Sassy, Inc. v. Berry</u>,
    406 F. Supp. 2d 874 (N.D. Ill. 2005) ...........................................................................11

<u>United States v. Burns</u>,
    No. 5:08CV3, 2008 WL 5263743 (N.D. W. Va. Dec. 18, 2008) ..................................8

<u>Wash. Nat'l Life Ins. Co. v. Calcasieu Parish Sch. Bd.</u>,
    No. 05 C 2551, 2006 WL 1215413 (N.D. Ill. May 2, 2006) ...................................6, 11

**Statutes & Rules**

28 U.S.C. § 1331......................................................................................................................7

28 U.S.C. § 1391(b) .................................................................................................................7

28 U.S.C. § 1404....................................................................................................................13

28 U.S.C. § 1404(a) ......................................................................................................1, 2, 6, 7

42 U.S.C. § 9601......................................................................................................................7

42 U.S.C. § 9607......................................................................................................................3

42 U.S.C. § 9613...................................................................................................................3, 8

42 U.S.C. § 9613(b) .................................................................................................................7

42 U.S.C. § 9613(f)..................................................................................................................9

**Other Authorities**

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and
    Procedure: Jurisdiction</u> § 3854 (3d ed. 2010) .............................................................10

iii

Defendant NCR Corporation ("NCR"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion for an order transferring this action, No. 10-C-1087, filed by Georgia-Pacific Consumer Products LP, Fort James Corporation and Georgia-Pacific LLC (collectively, "GP"), to the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1404(a).[1]

PRELIMINARY STATEMENT

Litigation relating to the Kalamazoo River Superfund Site (the "Kalamazoo Site") in southwest Michigan has been proceeding in the United States District Court for the Western District of Michigan (the "Michigan Court") since 1987, in all but one instance before a single judge. During that time, the Michigan Court has conducted five separate bench trials and entered eight judgments to adjudicate claims brought by GP for contribution and cost recovery against other PRPs at the Kalamazoo Site.

Despite a case history in the Michigan Court that spans twenty-three years, GP now brings this action for contribution and cost recovery in an entirely new forum: one that is located in a different state, and a different Circuit, than the Superfund Site at issue in this case. GP's claims against NCR arise from the alleged purchase and release of PCB-containing materials at facilities *in Michigan*. GP's claims against Defendant International Paper Co. ("IP") arise from the alleged release of PCBs from IP's Michigan facility, into a Michigan waterway. The Kalamazoo Site remediation efforts for which GP seeks contribution and cost recovery are being conducted under the supervision of the Michigan Department of Natural Resources ("MDNR") and the U.S. Environmental Protection Agency ("EPA"). The Michigan Court has

---

[1] NCR files herewith a Motion to Stay Proceedings pending resolution of this Motion to Transfer. NCR has met and conferred with GP regarding the relief requested in NCR's Motion to Stay Proceedings. Counsel for GP stated that they might be willing to consent to such a Stay, but that they first want to review NCR's Motion to Transfer.

managed all of the complex and extensive litigation arising from the Kalamazoo Site for one reason: the ties to Michigan are clear.

This Court has authority to transfer this action to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a) in the interests of justice and for the convenience of the parties. The Michigan Court's extensive experience with the complex industrial history and current remediation of the Kalamazoo Site weighs strongly in favor of transferring the action. The location of the harm, the interest of Michigan citizens in the case, the convenience of the parties and the ease of access to evidence similarly all weigh in favor of transfer. GP's decision to file this action in a new forum should not outweigh the clear practical and policy-based reasons for transferring the case to its proper forum.

STATEMENT OF RELEVANT FACTS

The Kalamazoo Site is comprised of an approximately 80-mile stretch of the Kalamazoo River from the Morrow Dam in Kalamazoo County, Michigan, to the estuary for Lake Michigan in Allegan County, Michigan, as well as certain adjoining facilities.[2] The Site also involves a three-mile stretch of Portage Creek in Kalamazoo County, which feeds into the Kalamazoo River. The MDNR began investigating contamination at the Kalamazoo Site nearly half a century ago, in 1965. In 1990, the MDNR listed the Site as an environmental contamination site pursuant to the Michigan Environmental Response Act; that same year, EPA also listed the Site as a Superfund site on the National Priorities List.

From as early as 1990, the MDNR and EPA identified as PRPs three paper companies with facilities located on or near the Kalamazoo River: Georgia Pacific; Millennium

---

[2] The facts contained herein are taken from the Michigan Court's decision in Kalamazoo River Study Grp. v. Rockwell Int'l ("KRSG"), 107 F. Supp. 2d 817 (W.D. Mich. 2000), as well as other related decisions that are publicly available on the Michigan Court's docket.

Holdings LLC; and Plainwell Inc. Together with the Fort James Corporation (which was identified as a PRP in the 1990s), these entities formed the Kalamazoo River Study Group ("KRSG"), which, along with other parties, has performed remedial design and cleanup work at the Kalamazoo Site.

Litigation concerning the cleanup of the Kalamazoo Site commenced in 1987, when MDNR filed a complaint under Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607, 9613, and other federal and state laws, against two of the KRSG PRPs in the Michigan Court. Since that date, cases arising from the Kalamazoo Site have been deemed "related" and have been adjudicated in the Western District of Michigan before Judge Robert Bell.[3] To NCR's knowledge, the present action is the first and only action relating to liability at the Kalamazoo Site that has ever been filed outside the Michigan Court.

During the history of the Kalamazoo actions, the Michigan Court has issued an extensive number of rulings addressing the complex liability issues at the Kalamazoo Site. The majority of these rulings arise directly from the 1995 contribution and cost recovery action brought by GP and the KRSG against other PRPs, who allegedly released PCBs into the Kalamazoo Site through leaky transformers, the manufacture of automotive parts, and the manufacture of recycled paperboard and other paper products. Judge Bell found that Aroclor 1242 PCBs at the Kalamazoo Site resulted from the recycling of post-consumer carbonless copy paper ("CCP") purchased by the PRPs from offices. See KRSG, 107 F. Supp. 2d at 828; KRSG v. Rockwell Int'l, No. 1:95-CV-838, at 10-11 (W.D. Mich. filed Dec. 8, 1998). Over the course

---

[3] In 2009, a partial consent decree between the United States and Georgia-Pacific LLP lodged in the Western District of Michigan was approved and entered by Judge Paul Maloney. All other matters relating to the Site have been assigned to Judge Bell.

3

of KRSG's extensive litigation for contribution at the Kalamazoo Site, NCR was not identified as a PRP nor named as a defendant in any of the suits.

Between 1995 and June 2003, the Michigan Court issued a series of decisions addressing KRSG's contribution claims. The Court granted summary judgment, in full or in part, in favor of five PRPs and against KRSG in separate decisions in February 1997, January 1998, March 1998 and June 1998. The Court held five separate bench trials to resolve the liability of the remaining PRPs, in August 1998, November 1999, January 2001, February 2001 and February 2002. The Sixth Circuit ultimately affirmed each of the liability rulings that KRSG appealed.[4]

GP alleges that it is the "only remaining PRP left at the Kalamazoo Site to provide ongoing funding to investigate and remediate the PCB contamination of the Kalamazoo River". Compl. ¶ 16. On November 24, 2010, EPA sent NCR a general notice letter stating that NCR may be liable as an alleged arranger for the transportation and disposal of paper material containing PCBs at the Kalamazoo Site.[5] NCR denies any such liability. On December 3, 2010, GP filed the Complaint in this action against NCR and IP.

---

[4] In March 1999, the Sixth Circuit affirmed the district court's February 1997 decision. See KRSG v. Rockwell Int'l, 171 F.3d 1065 (6th Cir. 1999). In October 2000, the Sixth Circuit reversed, in a consolidated appeal, the district court's grants of summary judgment in its March 1998 and June 1998 decisions and its post-trial December 1998 decision, on the ground that the court had applied an incorrect legal standard for determining liability under CERCLA. See KRSG v. Menasha Corp., 228 F.3d 648, 662 (6th Cir. 2000). On remand, the district court held trials to determine the liability of the PRPs at issue using an amended standard. KRSG lost each subsequent appeal of those decisions. See KRSG v. Rockwell Int'l Corp., 274 F.3d 1043 (6th Cir. 2001); KRSG v. Rockwell Int'l Corp., 355 F.3d 574 (6th Cir. 2004). KRSG's claims against the remaining PRPs were dismissed pursuant to stipulations or settlement agreements. See KRSG, 107 F. Supp. 2d at 818 n.1.

[5] EPA also sent general notice letters to IP, Consumers Energy Company and Mead Corporation ("Mead").

4

The events giving rise to GP's claims occurred in Michigan. GP's claims arise from alleged purchase of CCP by GP's facilities in Michigan, for use at those facilities in Michigan, allegedly resulting in releases into a Michigan waterway. See Compl. ¶¶ 69, 71, 72, 86. GP's claims against IP are also Michigan-based, since they arise from IP's alleged release of hazardous substances from the Bryant Mill facility in Portage, Michigan, into Portage Creek, a Michigan waterway that feeds into the Kalamazoo River. See Compl. ¶¶ 91, 95, 97. The remediation efforts for which GP seeks contribution and cost recovery have been overseen by the MDNR and EPA. The work is being completed subject to Administrative Orders on Consent issued by the MDNR and EPA and/or Consent Decrees entered by the Michigan Court. See Compl. ¶¶ 14-16, 20-25. The *only* connection to Wisconsin is GP's unsupported allegation that some of the CCP broke and trim purchased by GP's Michigan facilities originated in Wisconsin. See Compl. ¶¶ 51, 69, 71. This is tangential at best – especially when GP also alleges that its Michigan facilities purchased CCP broke and trim from Mead Corporation in Ohio. See Compl. ¶¶ 37, 78. As noted, to NCR's knowledge, this is the first and only action relating to liability for the Kalamazoo Site that has been filed outside the Western District of Michigan.

None of the parties to this suit are headquartered or have their principal place of business in the Eastern District of Wisconsin. Georgia-Pacific Consumer Products LP is a Delaware limited partnership with its principal place of business in Atlanta, Georgia. Fort James Corporation is a Virginia corporation with its principal place of business in Atlanta, Georgia. Georgia-Pacific LLC is a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia. NCR is a Maryland corporation with its principal place of business in Duluth, Georgia. IP is a New York corporation with its principal place of business in Memphis, Tennessee.

No Answer has been filed as of the date of this motion. No discovery has been sought or provided by any party. No substantive motions have been served or filed, except this motion and the contemporaneously filed motion for a stay. For the above reasons and as set forth more fully below, this Action should be transferred to the Western District of Michigan.

ARGUMENT

I. **Applicable Law.**

This Court has authority to transfer this action pursuant to 28 U.S.C. § 1404(a), which provides: "For convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought". Id. The purpose of § 1404(a) is "to prevent avoidable waste of time, energy and money, as well as to protect parties, witnesses and the public against inconvenience and expense". Conseco Life Ins. Co. v. Reliance Ins. Co., No. 99 C 5020, 2001 WL 1631873, at *3 (N.D. Ill. Dec. 14, 2001) (internal quotation marks omitted). In deciding a motion to transfer venue, a district court must exercise its discretion in light of the particular circumstances of each case and make an "individualized, case-by-case consideration" of all the relevant factors. Martinez v. Twin Garden Sales, Inc., No. 09-CV-653, 2010 WL 1180366, at *1 (E.D. Wis. Mar. 23, 2010). A motion to transfer should be granted when the moving party meets its "burden of establishing, by reference to particular circumstances, that the alternative forum is clearly more convenient". Brady v. Hanger Orthopedic Grp., Inc., No. 05 C 0492, 2006 WL 2560953, at *1 (N.D. Ill. Aug. 30, 2006).

In determining whether to transfer an action to another district, the court must balance "public" and "private" factors intended to promote the interests of justice and the convenience of the parties and witnesses. Wash. Nat'l Life Ins. Co. v. Calcasieu Parish Sch. Bd., No. 05 C 2551, 2006 WL 1215413, at *8-14 (N.D. Ill. May 2, 2006). The "public" factors

6

include: (1) the existence of related litigation in another district; (2) where the litigants are most likely to receive an efficient and speedy trial; and (3) the local interest in having localized controversies decided at home. See Conseco, 2001 WL 1631873, at *3. The "private" factors include: (1) the situs of material events; (2) plaintiff's choice of forum; and (3) the convenience of the forum for the parties and witnesses. Leuders v. 3M Co., No. 08 C 2457, 2008 WL 2705444, at *2 (N.D. Ill. Jul. 9, 2008). As set forth below, in this action, the public *and* private factors overwhelmingly support transfer to the Western District of Michigan.

II.     **Venue Is Proper in the Western District of Michigan.**

In deciding a motion to transfer venue under § 1404(a), a court must establish whether the action could have been brought in the transferee court. See Ellis Corp. v. Jensen USA, Inc., No. 02 C 7380, 2003 WL 22111100, at *1 (N.D. Ill. Sept. 9, 2003). There is no question that the present action could have been brought in the Western District of Michigan. The Michigan Court has subject matter jurisdiction over the case because it presents a federal question. See 28 U.S.C. § 1331; 42 U.S.C. § 9601 *et seq.* NCR does not dispute that it is subject to personal jurisdiction in the Western District of Michigan in connection with this action. Defendant IP is also subject to personal jurisdiction in the Western District of Michigan because the allegations relate to activities at IP's facility in that District. Finally, venue is clearly proper in the Western District of Michigan because the releases of hazardous substances, subsequent remediation, and alleged historical operations by GP giving rise to Plaintiff's claims occurred in that District, at the Kalamazoo Site. See 28 U.S.C. § 1391(b); 42 U.S.C. § 9613(b). Accordingly, the action could have been brought in the Western District of Michigan.

III.    **This Action Should Be Transferred to the Western District of Michigan.**

The interests of judicial economy and efficient resolution of the case weigh heavily in favor of transferring this action to the Michigan Court, which is already familiar with

7

the lengthy and complex history of the Kalamazoo Site. The Western District of Michigan is additionally best situated to adjudicate the case because the events giving rise to GP's claims occurred in Michigan, creating a logical connection to the Michigan Court and a strong interest on the part of Michigan citizens to have the case resolved there.

A. Transfer Would Promote the Interests of Justice.

1. *Actions Based on the Same Facts Alleged in the Complaint Have Been Ongoing in Michigan for over Two Decades.*

Courts have recognized that judicial economy supports the transfer of a case to another district court that is already familiar with the facts and issues involved, especially when those facts and issues are technical and complex. See, e.g., Regents of the Univ. of Cal. v. Eli Lilly & Co., 119 F.3d 1559, 1565 (Fed. Cir. 1997); United States v. Burns, No. 5:08CV3, 2008 WL 5263743, at *3 (N.D. W. Va. Dec. 18, 2008). Transfer is thus clearly warranted in a CERCLA action when another court is already well-versed in the complex issues related to the site in question.

Such circumstances justifying transfer are clearly present here. The Michigan Court is deeply familiar with the facts relating to potential liability and remediation efforts at the Kalamazoo Site. Moreover, the current action involves the same factual nexus as the prior actions that have been adjudicated in the Michigan Court: GP seeks to hold NCR liable as an alleged arranger for the very releases that have been the subject of litigation and related discovery in the Michigan Court since 1987. GP adds IP to the list of Kalamazoo PRPs from whom GP first started seeking contribution in the Michigan Court in 1995. Judicial economy and simple common sense militate in favor of transferring this case for resolution by that same court.

8

Transfer to the Michigan Court is particularly warranted in this instance because GP seeks contribution from Defendants under Section 113 of CERCLA, 42 U.S.C. § 9613. NCR vigorously denies any liability for hazardous releases at the Kalamazoo Site: GP points to no evidence and cites no facts to support an inference that NCR's predecessors sold CCP broke or trim to any Kalamazoo facility. However, if NCR or IP were found liable for contribution under Section 113, the Court would be required to conduct a comprehensive analysis to apportion liability among the parties and other PRPs based on equitable factors, requiring detailed and contextual knowledge of the Kalamazoo Site. See 42 U.S.C. § 9613(f). GP's claims also implicate complex factual determinations regarding the validity of remediation efforts at the Kalamazoo Site. The Michigan Court is uniquely situated to address these issues efficiently and consistently, in the best interests of the parties and the other entities who have a stake in the Kalamazoo Site. See, e.g., In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) (noting that "the familiarity and expertise of the [transferee] court arguably might be indispensable were this case to concern remedial measures to take place at the site").

2. *Transfer Will Facilitate a Speedy and Efficient Resolution.*

The interests of justice are served by transfer to a district that is in the best position to resolve the action quickly and efficiently. See Forcillo v. LeMond Fitness, Inc., 220 F.R.D. 550, 554 (S.D. Ill. 2004). As noted, the Michigan Court's familiarity with the extensive and complex factual background of the Kalamazoo Site will permit that court to resolve this action faster and more efficiently. Additionally, transfer to the Michigan Court will not result in any significant delay. No substantive motions have been served or filed except the present motion and stay request, and no discovery has been sought or provided by any party. Official statistics indicate that the action could be resolved just as quickly, if not more quickly, in the Western District of Michigan. This factor thus also favors transfer to the Michigan Court.

9

3.   *Michigan Citizens Have a Far Greater Interest than Wisconsin Citizens in this Dispute.*

The Supreme Court has long emphasized that "[t]here is a local interest in having localized controversies decided at home". Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947). Here, the interest of Michigan citizens in the adjudication of this case plainly outweighs the interest of Wisconsin citizens. People who live within the Western District of Michigan have a substantial interest in the remediation and restoration efforts at the Kalamazoo Site – and, more specifically, who will pay for those efforts. The Michigan Department of Natural Resources has investigated contamination at the Kalamazoo Site since at least 1965, and has been actively involved in pursuing claims against GP and other PRPs since the 1980s.

Courts have recognized that the "local interest" factor is particularly significant in environmental disputes. See, e.g., Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49-50 (D.D.C. 2006) (transferring case to Florida based in part on the "indisputable" interest of Florida citizens in the Florida endangered species and local water rights at issue, and noting that "the interests of justice are promoted when a localized controversy is resolved in the region that it impacts"); see also 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3854 n.28 (3d ed. 2010) (citing cases). Accordingly, this factor strongly supports transfer to Michigan.

B.   Michigan Is a Significantly More Convenient Forum.

1.   *The Events Giving Rise to GP's Claims Occurred in Michigan.*

The administration of justice is best facilitated when an action is litigated close to the "situs of material events". Wash. Nat'l, 2006 WL 1215413, at *9-10; Baroody v. Bankair, Inc., No. 02 C 7596, 2003 WL 168647, at *2 (N.D. Ill. Jan. 23, 2003). The events giving rise to GP's claims occurred in Michigan. GP alleges that its employees, based in its Michigan

10

facilities, purchased CCP broke and trim for use at GP's Michigan facilities, resulting in releases of hazardous substances to a Michigan waterway. The allegations against IP are similarly Michigan-based: GP alleges that IP released hazardous substances from its Michigan plant into a Michigan waterway, without alleging any connection to the Eastern District of Wisconsin. The only claimed nexus to Wisconsin is that some portion of the CCP broke and trim allegedly purchased by GP's Michigan facilities purportedly originated in Wisconsin. GP cites no direct evidence that this ever happened. And even taking GP's allegations on this point as true, this one tenuous connection does not alter the obvious fact that this is clearly and fundamentally a Michigan case. The minimal ties to Wisconsin, if any, do not warrant disturbing the Michigan Court's ongoing resolution of liability at the Kalamazoo Site. See, e.g., Leuders, 2008 WL 2705444, at *2-3 (granting transfer despite the fact that some material events may have occurred elsewhere because the [transferee district] "clearly ha[d] the edge . . . as the locus of material events").

        2.  *GP's Choice of Forum Should Be Entitled to Little, if Any, Weight.*

    Although a plaintiff's choice of forum is a factor to be considered on a transfer motion, it is neither controlling nor dispositive. See Sassy, Inc. v. Berry, 406 F. Supp. 2d 874, 876 (N.D. Ill. 2005). Deference to this factor is significantly diminished "where the plaintiff's choice of forum has a relatively weak connection with the operative facts giving rise to the claim or is not the plaintiff's home forum". Brady, 2006 WL 2560953, at *2.

    This action presents *both* circumstances that trigger "significantly diminished" deference to a plaintiff's choice of forum: Wisconsin has minimal connections, if any, to the operative facts giving rising to GP's claims, and Wisconsin is not GP's home forum. See CMG Worldwide, Inc. v. Upper Deck Co., No. 1:08-cv-761-RLY-JMS, 2008 WL 4690983, at *3 (S.D. Ind. Oct. 22, 2008) (finding that plaintiffs' choice of forum was "not entitled to deference" where

11

the connections between the events at issue and the forum selection were weak and plaintiffs were headquartered outside of the forum selected).

GP has pursued its claims for contribution against Kalamazoo PRPs in the Michigan Court since 1995. GP's decision to now pursue relief from two new PRPs, in a new and unrelated forum, should not outweigh the clear factors warranting transfer in this case.

### 3. *Michigan Would Be a More Convenient Forum for All Parties.*

An action should be heard in the forum that is most convenient for the parties. See Leuders, 2008 WL 2705444, at *2. Michigan is plainly the most convenient forum for adjudication of this action. GP can hardly claim to be burdened by transfer, as it chose the very district to which NCR seeks transfer as the forum for its initial suit against the original Kalamazoo River PRPs. Neither GP, NCR nor IP is headquartered in or has its principal place of business in Wisconsin, and the historical industrial activities of the parties at issue here ended long ago.

GP offers no indication of what witnesses it might call or evidence it will seek to support its claims against NCR. However, all of the physical evidence of contamination at the Kalamazoo Site must, of course, be obtained and evaluated at the Kalamazoo Site location, in the Western District of Michigan. GP's allegations that facilities on the Kalamazoo River purchased broke and trim will involve discovery of the records and testimony of paper buyers for GP's facilities, which are located in Michigan. Evidence relating to IP's releases at the Kalamazoo Site also is presumably located in the Western District of Michigan, in and around IP's Bryant Mill facility. Any inquiry into the validity of the remedy will likely require the participation of the Michigan state officials supervising clean-up at the Site, who are located in Michigan. This factor further justifies transfer to the Michigan Court. See Leuders, 2008 WL 2705444, at *3. The most logical and convenient forum is the "situs of material events", in the court that is

familiar with the complex history and circumstances of the action, and that has the most compelling interest in adjudicating the case: the Western District of Michigan.

## CONCLUSION

For the foregoing reasons, NCR respectfully requests that the Court transfer this action to the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1404.

Dated: January 18, 2011

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,
  by

/s/ Evan R. Chesler
Evan R. Chesler (NY Bar No. 1475722)

Sandra C. Goldstein (NY Bar No. 2198745)
Darin P. McAtee (NY Bar No. 2564755)*
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Phone: (212) 474-1000
Fax: (212) 474-3700
*Attorneys for NCR Corporation*

OF COUNSEL:

SIDLEY AUSTIN LLP
Kathleen L. Roach (IL Bar No. 6191432)
Evan B. Westerfield (IL Bar No. 6217037)
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

MARTEN LAW PLLC
Linda R. Larson (WA Bar No. 9171)
Bradley M. Marten (WA Bar No. 13582)
1191 Second Avenue, Suite 2200
Seattle, WA 98101
Phone: (206) 292-2600
Fax: (206) 292-2601

*\* Application for admission in Eastern District of Wisconsin pending*

13

**CERTIFICATE OF SERVICE**

        I hereby certify that on January 18, 2011, I electronically filed Defendant NCR Corporation's Memorandum of Law in Support of Its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) using the ECF system, which will send notification of such filing by operations of the Court's electronic systems. Parties may access this filing via the Court's electronic system.

                                                  /s/ Evan R. Chesler
                                                        Evan R. Chesler