IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| GEORGIA-PACIFIC CONSUMER PRODUCTS LP, FORT JAMES CORPORATION, and GEORGIA-PACIFIC LLC<br><br>Plaintiffs,<br><br>v.<br><br>NCR CORPORATION and INTERNATIONAL PAPER CO.,<br><br>Defendants. | Civil Action No. 10-CV-01087 |

**DEFENDANT INTERNATIONAL PAPER CO.'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FOURTH CAUSE**
**OF ACTION FOR RESPONSE COSTS UNDER SECTION 107 OF CERCLA**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ............................................................................................................ 1

    A. Georgia-Pacific's Attempt To Distinguish The Procedural Circumstances Here From Those In Fox River Falls Short ............................................................ 2

        1. Georgia-Pacific's Myopic Focus On "The One And Only Civil Action" In This Case Ignores The Broad Scope Of The Numerous Orders Compelling Georgia-Pacific To Take Action At The Kalamazoo River Site ................................................................................ 3

        2. Georgia-Pacific's Contention That It Can Bring A Section 107 Claim Because It Worked Cooperatively With Regulators And Is "Not Legally Responsible" For Contamination At The Kalamazoo Site Is Meritless ................................................................................. 5

        3. The Cases Cited By Georgia-Pacific Are Readily Distinguishable ........... 6

    B. Georgia-Pacific's Argument That The Types Of Costs It Seeks Should Be Analyzed Has Already Been Rejected By This Court .......................................... 8

        1. Georgia-Pacific's Posture In This Case Is Similar To That Of The Fox River Plaintiffs ..................................................................................... 8

        2. Georgia-Pacific's Section 107 Claim Is Legally Impossible ..................... 9

III. CONCLUSION ...................................................................................................... 11

TABLE OF AUTHORITIES

Page

CASES

Agere Sys., Inc. v. Advanced Evnvtl. Tech. Corp.,
   602 F.3d 204 (3d Cir. 2010) ................................................................................ 8

Appleton Papers, Inc. v. George A. Whiting Paper Co.
   2009 WL 3931036 (E.D. Wis. Nov. 18, 2009) ............................................... 2, 5, 12

Appleton Papers, Inc. v. George A. Whiting Paper Co.
   572 F. Supp. 2d 1034 (E.D. Wis. 2008) ..................................................... 7, 10, 11, 13

Bedford Affiliates v. Sills
   156 F.3d 416 (2d Cir. 1998) .................................................................................. 10, 11

Champion Labs, Inc. v. Metex Corp.
   2008 WL 1808309 (D.N.J. Apr. 21, 2008) ............................................................ 12, 13

City of Waukegan, Ill. v. Nat'l Gypsum Co.
   2009 WL 4043295 (N.D. Ill. Nov. 20, 2009) .................................................... 9, 12, 13

Gen. Elec. Capital Corp. v. Lease Resolution Corp.
   128 F.3d 1074 (7th Cir. 1997) ................................................................................ 3

Kotrous v. Goss-Jewett Co. of N. Cal., Inc.
   523 F.3d 924 (9th Cir. 2008) .................................................................................. 9

Morrison Enterprises, LLC v. Dravo Corp.
   2011 WL 1237526 (8th Cir. Apr. 5, 2011) ...................................................... passim

New York v. Solvent Chemical Co., Inc.
   2008 WL 3211273 (W.D.N.Y. Aug. 6, 2008) ........................................................ 8

Niagara Mohawk Pwr. Corp. v. Chevron U.S.A., Inc.
   596 F.3d 112 (2d Cir. 2010) ............................................................................ 8, 13, 14

Town of Munster v. Sherwin-Williams
   27 F.3d 1268 (7th Cir. 1994) .................................................................................. 11

United States v. Atl. Research Corp.
   551 U.S. 128 (2007) ......................................................................................... 2, 5, 14

United States v. Pharmacia Corp.
   713 F. Supp. 2d 785 (S.D. Ill. 2010) ...................................................................... 12

A/74160760.8

TABLE OF AUTHORITIES
(continued)

Page

W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.
  559 F.3d 85 (2d Cir. 2009) ............................................................................................. 8, 9

STATUTES

42 U.S.C. § 9604 ................................................................................................................... 4

42 U.S.C. § 9606 ........................................................................................................... passim

42 U.S.C. § 9607 ........................................................................................................... passim

42 U.S.C. § 9613 ........................................................................................................... passim

42 U.S.C. § 9622 ............................................................................................................. 4, 14

I.  INTRODUCTION

In its Opposition to International Paper Company's Motion to Dismiss ("Opp'n"), Georgia-Pacific[1] tries to distinguish the procedural circumstances in this case from those in the Fox River litigation (Appleton Papers, Inc. v. George A. Whiting Paper Co., Case No. 08-C-16). Georgia-Pacific's effort fails. The procedural posture of this case simply confirms that Georgia-Pacific's claim falls squarely within Section 113, 42 U.S.C. § 9613 ("Section 113") of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which means it cannot bring a claim under Section 107, 42 U.S.C. § 9607 ("Section 107") of CERCLA.

Narrowly focusing on only one government lawsuit concerning the Kalamazoo River Superfund Site (the "Site"), Georgia-Pacific ignores the numerous government actions pursuant to CERCLA Section 106, 42 U.S.C. § 9606 ("Section 106") and Section 107 which prohibit Georgia-Pacific from bringing a claim for recovery of response costs under Section 107. As the Administrative Orders on Consent ("AOCs"), government lawsuit, and Consent Decree demonstrate, Georgia-Pacific has not voluntarily and "cooperatively" cleaned up contamination for which it is allegedly "not legally responsible"; rather, it has responded to government agency direction and undertaken actions it has been compelled to do. Thus, to the extent it has any claim against International Paper Company, as a matter of law, Georgia-Pacific is limited to a Section 113(f) claim, and its Section 107 claim should be dismissed.

II. ARGUMENT

It is legally impossible for Georgia-Pacific to plead a proper CERCLA Section 107 claim against International Paper Company ("International Paper"). As Georgia-Pacific recognized just two months ago, parties such as Georgia-Pacific which meet the criteria necessary to assert a Section 113(f) contribution claim may not assert a Section 107 cost recovery claim. Georgia-Pacific itself made the same argument to this Court (and relied upon the same authorities cited by International Paper) in Georgia-Pacific's own Motion to Dismiss NCR Corporation's ("NCR")

---

[1] The term "Georgia-Pacific" refers to plaintiffs Georgia-Pacific Consumer Products LP, Fort James Corporation, and Georgia-Pacific LLC.

1

Section 107 claim in U.S. v. NCR Corporation, Civil Action No. 10-cv-00910-WCG (the "NCR Case"). Georgia-Pacific cannot salvage a Section 107 claim in this case by trying to distinguish the procedural circumstances from those in the Fox River case.

> A. Georgia-Pacific's Attempt To Distinguish The Procedural Circumstances Here From Those In Fox River Falls Short

As Georgia-Pacific points out,

> "The controlling principle comes from the Supreme Court's holding that 'the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action "to persons in different procedural circumstances."' The relevant 'procedural circumstances' are whether the party's incurred costs resulted from a government action under § 106 or 107. If they did, the party **must** use § 113. . . ."

Opp'n at 2 (citing Appleton Papers, Inc. v. George A. Whiting Paper Co., 2009 WL 3931036, *1, *5 (E.D. Wis. Nov. 18, 2009) (quoting United States v. Atl. Research Corp., 551 U.S. 128, 139 (2007)) (underline and bold emphasis added). In its reply brief filed in the NCR Case on February 24, 2011, Georgia-Pacific admitted:

> [T]he result in the Seventh Circuit – consistent with the overwhelming weight of authority – is that parties with 113(f) claims must proceed under 113(f) and may not assert 107(a) claims.

Georgia-Pacific's Consolidated Reply in Support of Its Motion to Dismiss Defendant Appleton Papers Inc.'s Cross-Claim and Defendant NCR Corporation's Cross-Claim filed in the NCR Case ("Georgia-Pacific's NCR Case Reply") at 8.[2] Georgia-Pacific further explained that:

> The law is clear that parties – like NCR/API – who have been subject to a prior governmental enforcement action under 106 or 107 are entitled exclusively to a 113(f) contribution claim.

Id. at 12. Now seeking to avoid this "clear" standard, Georgia-Pacific argues that the

---

[2] A true and correct copy of Georgia-Pacific's NCR Case Reply is attached hereto as Exhibit L. International Paper requests that the Court take judicial notice of this document. See Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997).

"procedural circumstances" of its claims in this case "are materially different from those at issue in the Fox River case and <u>may</u> compel a different result regarding the viability of section 107 cost recovery claims." Opp'n at 2-3 (emphasis added). However, the alleged differences that Georgia-Pacific cites do not save its Section 107 claim. In fact, as demonstrated below, the procedural circumstances here clearly restrict Georgia-Pacific to a Section 113(f) claim.

        1.    <u>Georgia-Pacific's Myopic Focus On "The One And Only Civil Action" In This Case Ignores The Broad Scope Of The Numerous Orders Compelling Georgia-Pacific To Take Action At The Kalamazoo River Site</u>

Georgia-Pacific argues that because "the one and only civil action" filed against it concerning the Kalamazoo Site was less broad than the "civil action" in the Fox River case, Georgia-Pacific may assert a Section 107 claim here. Opp'n at 3. According to Georgia-Pacific, the Section 106 civil action in Fox River "addressed the entirety of the Fox River Superfund Site," whereas the one filed against Georgia-Pacific concerning the Kalamazoo River was limited to the Willow Boulevard/A-Site Landfill. Id. However, Georgia-Pacific ignores the multiple AOCs issued to Georgia-Pacific (all of which were issued pursuant to CERCLA Sections 106(a) and/or 107), which relate not only to other areas within the Kalamazoo River Superfund Site, but also to the entire Site.

For example, the State 1990 AOC[3] required Georgia-Pacific to prepare, perform, and reimburse oversight costs "for the remedial investigation and feasibility study (RI/FS) <u>for the Site</u>." Ex. D[4] (State 2007 AOC), ¶ 1 (emphasis added). The State 1990 AOC defined the "Site" as "the listed Superfund site known as the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site." Ex. D. In addition, both the Feb. 2007 Removal Action AOC and the Feb. 2007 RI/FS AOC governed work at Operable Unit 5 ("OU5"), which concerns the Portage Creek and Kalamazoo River sediments. Compl., ¶¶ 24, 25. The Feb. 2007 Removal Action AOC was issued pursuant to CERCLA Sections 104, 42 U.S.C. § 9604 ("Section 104"), 106(a), 107, and

---

[3] Capitalized terms not expressly defined herein have the meaning provided in International Paper's Motion to Dismiss.

[4] Exhibits A through K were submitted in support of International Paper's Motion to Dismiss.

122, 42 U.S.C. § 9622 ("Section 122"), and the Feb. 2007 RI/FS AOC was issued pursuant to Sections 104, 107, and 122. Ex. E, ¶ 2; Ex. F, ¶ 2.

Furthermore, the June 2009 AOC requires removal actions at Plainwell Dam #2, which is part of OU5 at the Site, as well as payment of EPA's "Future Response Costs." Ex. I, ¶¶ 1, 36.a. The June 2009 AOC was issued pursuant to CERCLA Sections 104, 106(a), 107, and 122. Id., ¶ 2. Moreover, Georgia-Pacific was sued by the United States in May 2009 under CERCLA Sections 106(a), 107(a), and 113(g)(2) for injunctive relief and recovery of costs regarding Operable Unit 2 ("OU2") at the Site. Ex. G, ¶ 1. Several months later, "a [C]onsent [D]ecree between EPA and Georgia-Pacific for design and cleanup at the Willow Boulevard/A-Site Landfill [which is part of OU2] was approved by a Federal District Court." Compl. ¶ 21.[5]

The "particular facts and procedural circumstances" of the numerous actions and AOCs in this case are very similar to those in the Fox River case. Indeed, in Fox River, Georgia-Pacific asserted that "NCR/API's exclusive 113(f) claim is supported by the fact that they have been subject to numerous CERCLA government actions regarding the [Lower Fox River ("LFR")]." Ex. L (Georgia-Pacific's NCR Case Reply) at 11; see also Georgia-Pacific's Memorandum of Points & Authorities in the NCR Case at 2 ("because prior governmental enforcement actions had been taken against NCR/API, they could initiate CERCLA Section 113 contribution claims against other PRP's [sic], but were therefore legally prohibited from asserting LFR 107 claims against any other party").[6]

The same is true here. Georgia-Pacific has been subject to (and thus, its costs have been incurred as a result of) numerous CERCLA government actions pursuant to CERCLA Sections 106 and 107 regarding specific OUs and the entire Kalamazoo River site, which prohibit Georgia-Pacific from bringing a Section 107 claim. See Atlantic Research, 551 U.S. at 139 (if a party's incurred costs resulted from a government action under Section 106 or 107, the party must use Section 113). Furthermore, Georgia-Pacific has pled a Section 113(f) claim against

---

[5] Work at OU4 is being conducted by Weyerhauser. Compl., ¶ 23.
[6] A true and correct copy of this document is attached hereto as Exhibit M.

International Paper. Compl., ¶¶ 134-45. Georgia-Pacific's Section 107 claim should therefore be dismissed. See Appleton Papers, 2009 WL 3931036 at *1 (citing court's prior decision dismissing plaintiffs' Section 107 claim because they "were able to sue other parties for contribution under CERCLA § 113(f)").

      2.      <u>Georgia-Pacific's Contention That It Can Bring A Section 107 Claim Because It Worked Cooperatively With Regulators And Is "Not Legally Responsible" For Contamination At The Kalamazoo Site Is Meritless</u>

Georgia-Pacific asserts that it can bring a Section 107 claim because it worked "cooperatively" with regulators and is "not legally responsible" for contamination at the Kalamazoo site. Opp'n at 3. Georgia-Pacific's position is similar to the plaintiff's argument in <u>Morrison Enterprises, LLC v. Dravo Corp.</u>, 2011 WL 1237526 (8th Cir. Apr. 5, 2011), that it could bring a Section 107 claim because it had "voluntarily" cleaned up contamination for which the defendant was legally liable. <u>Morrison</u>, at *6. The Eighth Circuit rejected this argument, finding that the plaintiff "ignore[d] the terms of the AOCs to which it is bound." <u>Id</u>. Unlike the voluntary plaintiff in <u>Atlantic Research</u>, which had never been subject to a Section 106 or 107 action, the <u>Morrison</u> plaintiff had been sued under Section 107 for releases and potential releases of hazardous substances and entered into administrative settlements. For example, a 1996 AOC "obligated" the plaintiff to operate a well to remove TCE from the groundwater as a "liable party" under Section 107(a) and subjected it to penalties if it failed to do so. <u>Morrison</u>, at *6. "Response costs incurred pursuant to such administrative settlements following a suit under § 106 are not incurred voluntarily." <u>Id</u>.[7]

Likewise, here Georgia-Pacific has been sued under Sections 106(a) and 107(a) and has entered into a Consent Decree and numerous AOCs pursuant to the same CERCLA provisions. Ex. E, ¶ 2; Ex. F, ¶ 2; Ex. G, ¶ 1; Ex. H, ¶ 1; Ex. I, ¶ 2. The State 1990 AOC "<u>required</u> the

---

[7] The <u>Morrison</u> court similarly found that the City did not "voluntarily" incur response costs operating Well-D. The City was subject to enforcement under Sections 106 and 107 and had resolved its liability to the federal government in administrative and judicially approved settlements, including a 1992 AOC (which "obligated the City, as a liable party, to perform certain remedial actions at the site"), 1998 Consent Decree, 2004 AOC (which required the City to finance and perform certain work), and a 2007 Consent Decree. <u>Id</u>. at *7.

preparation of, performance of, and reimbursement of oversight costs for the remedial investigation and feasibility study (RI/FS) for the Site." Ex. D, ¶ 1 (emphasis added). Also, the two Feb. 2007 AOCs obligated Georgia-Pacific to perform certain work at the Site (Compl. ¶ 25) and to pay "Future Response Costs" incurred by EPA and/or the State (Ex. E, ¶¶ 36, 40; Ex. F, ¶ 75.a); failure to make timely payments subjects Georgia-Pacific to penalties. Ex. E, ¶ 37, Ex. F, ¶ 76. Similarly, the 2009 Consent Decree "<u>obligates</u> Georgia-Pacific to consolidate waste materials, construct a permanent landfill cap, and install a groundwater monitoring system" (Compl. ¶ 21 (emphasis added)), as well as to pay EPA's past and future response costs (Ex. H, ¶¶ 56-57). Georgia-Pacific is also subject to stipulated penalties for failure to comply with the Consent Decree's requirements. Ex. H, ¶¶ 73-85.[8]

Thus, as this Court observed in the Fox River case, the idea that any of the response costs paid by Georgia-Pacific were "voluntary" or that it is not "legally responsible" for the contamination "is curious, to say the least." See <u>Appleton Papers, Inc. v. George A. Whiting Paper Co.</u>, 572 F. Supp. 2d 1034, 1043 n.8 (E.D. Wis. 2008). Similar to the plaintiffs in Fox River, Georgia-Pacific's costs and payments for investigating and cleaning up the PCB contamination of the Kalamazoo River resulted from Georgia-Pacific's recognition that it was "at least in part responsible for the contamination." See <u>id.</u>; see also Ex. E at ¶ 70.b; Ex. F at ¶ 88.b. Furthermore, using this Court's reasoning in the Fox River case, payments Georgia-Pacific made prior to the United States' lawsuit in 2009 "are no more or less voluntary than payments made pursuant to the consent decree" and the AOCs to which Georgia-Pacific was a party. See <u>Appleton Papers</u>, 572 F. Supp. 2d at 1043 n.8; <u>see also</u> <u>Morrison</u>, at *7-*8 (finding response costs incurred pursuant to AOCs were not voluntary). As a result, Georgia-Pacific's argument is meritless and does not save its Section 107 claim.

---

[8] The June 2009 AOC requires Georgia-Pacific to engage in specified removal actions at Plainwell Dam #2, which is part of OU5 at the Site, as well as to pay EPA's "Future Response Costs." Ex. I, ¶¶ 1, 36.a. Georgia-Pacific is liable for stipulated penalties if, <u>inter alia</u>, it fails to make timely payments. See <u>id.</u>, ¶ 37.

### 3. The Cases Cited By Georgia-Pacific Are Readily Distinguishable

Georgia-Pacific cites several cases for the general proposition that "PRPs in certain procedural circumstances may assert section 107 claims." Opp'n at 3. However, almost all[9] of the cases can be distinguished on the ground that none of the plaintiffs had Section 113(f) claims available and thus were in different procedural circumstances from Georgia-Pacific. See, e.g., Agere Sys., Inc. v. Advanced Evnvtl. Tech. Corp., 602 F.3d 204 (3d Cir. 2010) (plaintiffs had never been sued by EPA or other PRPs and therefore could not bring a Section 113(f) claim). In the NCR Case, Georgia-Pacific itself distinguished the same cases it now cites on these same grounds. See Georgia-Pacific's NCR Case Reply at 9 n.6 (distinguishing W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc., 559 F.3d 85 (2d Cir. 2009), and City of Waukegan, Ill. v. Nat'l Gypsum Co., 2009 WL 4043295, *7 (N.D. Ill. Nov. 20, 2009), because, unlike NCR/API, the plaintiffs in those cases had not incurred costs which gave rise to Section 113(f) claims).

Similarly, the Eighth Circuit in Morrison distinguished two of the cases Georgia-Pacific cites, W.R. Grace, 559 F.3d at 91-93, and Kotrous v. Goss-Jewett Co. of N. Cal., Inc., 523 F.3d 924, 933-34 (9th Cir. 2008), because "none of the plaintiffs in the cited cases had resolved its § 107 liability, nor entered into administrative or judicially approved settlements within the meaning of § 113(f)." Morrison, at *7. In comparison, Georgia-Pacific has been sued by the EPA and has entered into administrative and judicially approved settlements. These differences

---

[9] In one case from within the Second Circuit, New York v. Solvent Chemical Co., Inc., 2008 WL 3211273 (W.D.N.Y. Aug. 6, 2008), the court allowed the plaintiffs to amend their Complaint after trial to assert a Section 107 claim even though they had involuntarily incurred expenses pursuant to a consent decree after a Section 107(a) action and had already asserted a Section 113(f) claim. However, Solvent Chemical was decided before Niagara Mohawk Pwr. Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 127-28 (2d Cir. 2010), where the Second Circuit held that if a PRP's claim "fits squarely within" Section 113(f), it cannot bring a claim for relief under Section 107. Thus, Solvent Chemical was effectively overruled by Niagara Mohawk. Also, unlike Georgia-Pacific in this case, plaintiffs in Solvent Chemical had not "reimbursed the costs of another party." Id. at *2. Furthermore, the court made clear that it viewed the relief plaintiffs sought as "available in the form of 'contribution' under CERCLA" and would "make every effort to fairly and equitably apportion liability" for remediation costs "regardless of what section of CERCLA is involved." Id. at *2-*3.

"deprive[] [Georgia-Pacific's] cases of any persuasive value." See Morrison, at *7. Georgia-Pacific is limited to a Section 113(f) claim, and its Section 107 claim should be dismissed.[10]

B. Georgia-Pacific's Argument That The Types Of Costs It Seeks Should Be Analyzed Has Already Been Rejected By This Court

Georgia-Pacific tries to save its Section 107 claim by arguing that its Complaint "does not allege that Georgia-Pacific's costs arise *only* from" certain orders and decrees signed by Georgia-Pacific. Opp'n at 6 (emphasis in original). Georgia-Pacific claims, therefore, that "the court does not have a full record from which to rule that no viable section 107 claim for *any* type of cost has been pled in the Complaint." Id. (emphasis in original). However, the Court does not need to have this sort of full record. As this Court determined in the Fox River case, "[T]he operative principle appears to be that § 107(a) is available to recover payments only in cases where § 113(f) is not. In cases where a claim for contribution can be asserted under § 113(f), § 107(a) cannot be used." Appleton Papers, 572 F. Supp. 2d at 1043. Here, because Georgia-Pacific can seek to recover its costs under Section 113(f) for the reasons set forth in International Paper's moving papers, Georgia's Pacific's Section 107(a) claim should be dismissed. See id. at 1044.

1. Georgia-Pacific's Posture In This Case Is Similar To That Of The Fox River Plaintiffs

The plaintiffs in Fox River made an argument similar to Georgia-Pacific's, claiming that the focus should be on the nature of their costs (which they say they incurred voluntarily). Appleton Papers, 572 F. Supp. 2d at 1041. This Court decided that the party's procedural status -- not the types of costs incurred -- was the relevant factor, basing its conclusion on the Second

---

[10] Georgia-Pacific also argues that it "has not sued any other party for joint and several liability, thereby seeking to avoid its own liability by using section 107 to recover what would not be equitable under section 113." Opp'n at 3. This argument is a red herring. What is relevant is that Georgia-Pacific has been sued and has entered AOCs and a Consent Decree issued under the authority of Sections 106 and/or 107 of CERCLA. Thus, its only redress for paying more than its fair share, if any, is to seek contribution under Section 113(f). See Atlantic Research, 459 F.3d at 835; Morrison, at *6 ("Section 113(f) provides "the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under §§ 106 or 107").

Circuit's reasoning in Bedford Affiliates v. Sills: "Were we to permit a potentially responsible person to elect recovery under either § 107(a) or § 113(f)(1), § 113(f)(1) would be rendered meaningless. . . . A recovering liable party would readily abandon a § 113(f)(1) suit in favor of the substantially more generous provisions of § 107(a)." Appleton Papers, 572 F. Supp. 2d at 1043 (quoting Bedford Affiliates v. Sills, 156 F.3d 416, 424 (2d Cir. 1998)).

Thus, this Court held in Fox River that plaintiffs could seek to recover under Section 113(f) "whatever payments they made in excess of their proportionate share. This would include not only payments made pursuant to the consent decree . . ., but also any other payments they made to discharge their common liability under § 107(a) before or after that time." Appleton Papers, 572 F. Supp. 2d at 1044. Georgia-Pacific seeks to recover in both its Section 107 and Section 113(f) claims the same type of "excess payments." See Compl., ¶ 142 (alleging that Georgia-Pacific has reimbursed the United States and the State of Michigan for amounts "greater than its equitable share"), ¶ 154 (same).[11] Since any excess payments made by Georgia-Pacific are recoverable (if at all) under Section 113(f), its Section 107 claim should be dismissed. See Appleton Papers, 572 F. Supp. 2d at 1044.

2. Georgia-Pacific's Section 107 Claim Is Legally Impossible

According to Georgia-Pacific, its posture is procedurally similar to that of the plaintiffs in United States v. Pharmacia Corp., 713 F. Supp. 2d 785 (S.D. Ill. 2010). Opp'n at 5. However, in Pharmacia, the crossclaim plaintiffs' Section 113 claim had been dismissed five years before

---

[11] Georgia-Pacific complains that International Paper "makes too much of the fact that Georgia-Pacific's response cost claim employs language typically found in contribution claims" and justifies its reference to "equitable share" of costs by saying that the Court "may consider equitable factors when resolving a response cost claim." Opp'n at 6. Georgia-Pacific misses the point and misstates the law. International Paper highlighted Georgia-Pacific's allegations in its Section 107 claim that it had made payments and incurred costs "greater than Georgia-Pacific's equitable share" (Compl., ¶ 154) to show that Georgia-Pacific has alleged the elements of a contribution claim, even in its Section 107 claim. Since any excess payments made by Georgia-Pacific are recoverable, if at all, under Section 113(f), Georgia-Pacific "has no need to resort to § 107(a)." See Appleton Farms, at 1044. Also, the majority of courts, including the Seventh Circuit, hold that CERCLA does not permit equitable defenses to Section 107 liability (although equitable factors may be considered in the allocation of contribution shares). See, e.g., Town of Munster v. Sherwin-Williams, 27 F.3d 1268 (7th Cir. 1994).

they sought to bring a Section 107(a) claim against the crossclaim defendant. Pharmacia, at 787. The court even noted that the case presented a "unique procedural context." Id. at 788. In comparison, here Georgia-Pacific has concurrently alleged both a Section 113(f) contribution claim and a Section 107 cost recovery claim, which is improper. See Appleton Papers, 2009 WL 3931036 at *1 ("because Plaintiffs Appleton Papers Inc. ("API") and NCR Corp. were able to sue other parties for contribution under CERCLA § 113(f), they were barred from bringing a claim under § 107"). As the Pharmacia court acknowledged, the Supreme Court held in Atlantic Research that "if a PRP is eligible to seek contribution under § 113(f), 'the PRP cannot simultaneously seek to recover the *same expenses* under § 107(a).'" Id. at 790 (quoting 551 U.S. at 139) (emphasis in Pharmacia). Georgia-Pacific's improper attempt to simultaneously bring claims under both Section 107 and Section 113(f) should not be allowed. See id.

Georgia-Pacific cites as well to City of Waukegan, 2009 WL 4043295 at *7, and Champion Labs, Inc. v. Metex Corp., 2008 WL 1808309, at *9 (D.N.J. Apr. 21, 2008), to support its argument that its Section 107 claim "is factually and legally possible." Opp'n at 5-6.[12] However, as Georgia-Pacific acknowledged in its NCR Case Reply, Waukegan is not applicable because the plaintiff's costs in that case "did not give rise to 113(f) claims," unlike NCR/API which "did have 113(f) claims." Georgia-Pacific's NCR Case Reply at 9-10 n.6. Similar to NCR and API, Georgia-Pacific does have a Section 113(f) claim, so Waukegan is inapplicable.

Champion Labs does not help Georgia-Pacific either. In Champion Labs, Champion sought to dismiss the defendant's Section 107 counterclaim on the ground that the defendant

---

[12] Georgia-Pacific also asserts that "[p]urely as a matter of pleading, the section 107 claim is legally sufficient." Opp'n at 5. However, this Motion does not challenge how Georgia-Pacific's Section 107 claim is pled; rather, this Motion challenges Georgia-Pacific's Section 107 claim as a matter of law. The law is clear that PRPs can sue under either Section 107 or Section 113(f), but not both. See, e.g., Appleton, 572 F. Supp. 2d at 1043 ("the operative principle appears to be that § 107(a) is available to recover payments only in cases where § 113(f) is not. In cases where a claim for contribution can be asserted under § 113(f), § 107 cannot be used"); Niagara Mohawk, 596 F.3d at 127-28 (if a PRP's claim "fits squarely within" Section 113(f), it cannot bring a claim for relief under Section 107).

could not factually allege that it had incurred response costs due to certain actions at the plaintiff's site. The court denied the motion, reasoning that Champion's argument "concerns a resolution of a material, factual dispute that is inappropriate at the pleading stage." Champion Labs, 2008 WL 1808309 at *9. In comparison, the issue here is not whether Georgia-Pacific's Section 107 claim is factually plausible; instead, Georgia-Pacific's Section 107 claim should be dismissed because it is legally impossible. See Atlantic Research, 551 U.S. at 139 (if a party's incurred costs resulted from a government action under Section 106 or 107, the party must use Section 113); Niagara Mohawk, 596 F.3d at 127-28 (if a PRP's claim "fits squarely within" Section 113(f), it cannot bring a claim for relief under Section 107); Morrison, at *6 (Section "113(f) provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under §§ 106 or 107").

III.   CONCLUSION

Courts do not allow PRPs to maintain a Section 107 claim at the same time as a Section 113(f) claim simply for "academic interest." Yet that is what Georgia-Pacific apparently seeks to do here. See Opp'n at 7 (stating that if Georgia-Pacific ultimately recovers all of its costs pursuant to Section 113, then "the availability of section 107 would become largely of academic interest"). To quote from Georgia-Pacific's reply brief in the NCR Case, the law in the Seventh Circuit, which is "consistent with the overwhelming weight of authority – is that parties with 113(f) claims must proceed under 113(f) and may not assert 107(a) claims." Georgia-Pacific's NCR Case Reply at 8. The law is also clear that parties – like Georgia-Pacific – "who have been subject to a prior governmental enforcement action under 106 or 107 are entitled exclusively to a 113(f) contribution claim." Id. at 12; see Atlantic Research, 551 U.S. at 139; Niagara Mohawk, 596 F.3d at 127-28; Morrison, at *6.

/ / /

/ / /

/ / /

/ / /

For all of the foregoing reasons, International Paper respectfully requests that Georgia-Pacific's Section 107 claim be dismissed.

May 2, 2011                    Respectfully submitted,

**INTERNATIONAL PAPER COMPANY**

      s/ R Raymond Rothman_____
R Raymond Rothman, SBN 142437
BINGHAM MCCUTCHEN LLP
355 S. Grand Avenue, 44th Floor
Los Angeles, CA  90071
Phone: (213) 680-6590
Fax:     (213) 680-6499
Email: rick.rothman@bingham.com

Ian A.J. Pitz, SBN 1031602
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, Wisconsin 53701-1806
Phone: (608) 257-3501
Fax: (608) 283-2275
Email: iapitz@michaelbest.com